**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE**

UNITED STATES OF AMERICA                                                    PLAINTIFF

v.                                                    CRIMINAL ACTION NO. 3:18-CR-180-CRS

Lubana SINGH                                                                        DEFENDANT

## MEMORANDUM OPINION

### I.      Introduction

This case is before the Court on Defendant's motion to suppress. DN 54. The United

States has responded (DN 55) and the time to reply has expired. Therefore, this matter is ripe for

review. Finding that no factual issue exists which would require an evidentiary hearing and that

Singh voluntarily consented to the search of his vehicle, the Court will deny the motion in all

respects.

### II.      Factual Background and Procedural History

On October 10, 2018, Officer Jeremiah Landry of the Shively Police Department pulled

over a car driven by Defendant Lubana Singh. It is uncontested that Singh was speeding and had

failed to signal his intent to turn before doing so. *See* DN 54 at 1 ("Singh has no basis to

challenge the assertion that he committed a traffic violation"). After Landry stopped Singh, he

activated his body camera. A recording of the encounter has been provided to and reviewed by

the Court. *See* DN 58.[1]

---

[1] To obtain an evidentiary hearing, a "defendant must make some initial showing of contested facts." *United States v. McGhee*, 161 F. App'x 441, 443–44 (6th Cir. 2005) (citation omitted). Since the video provided to the Court depicts the events giving rise to this motion and Singh does not challenge the accuracy or completeness of the video as relevant to this opinion, the Court determines that no evidentiary hearing is required.

The video begins with Landry exiting his vehicle, informing Singh of the reason he stopped him, and asking for his driver's license, registration, and proof of insurance. Singh quickly complied while the two engaged in small talk regarding Singh's employment and family. Both Singh and the United States note that the conversation relevant to this motion begins at 2:20 into the video, where the following exchange occurs:

**Officer Landry:** Well look, is everything alright with you, man?

**Singh:** Yes sir, pretty good. I'm just—feels, like, awful because I've never got no pull up like that. I mean, nobody stop me because I made a mistake. I'm really apologize.

**Officer Landry:** She was checking the status of your driver's license. Umm . . . The reason I was asking about is everything is okay with you man is because you seem a little nervous. You're shaking.

**Singh:** No, because . . . .

**Officer Landry:** Your hands are shaking.

**Singh:** No, no, it's [inaudible]—I made a mistake because she almost hit me back there on . . . uh . . . Crums Lane.

**Officer Landry:** Uh huh.

**Singh:** And . . . uh . . . I never got pulled over like that.

**Officer Landry:** Really?

**Singh:** Yes, sir.

**Officer Landry:** Oh. Okay. Well, you live just outside of Shively, technically.

**Singh:** Yes, sir.

**Officer Landry:** Okay. You're not like, you don't live inside of our city limits so, but we have been having a lot of problems lately with . . . uh . . . I don't want to say gang activity, but you know like little burglaries, and thefts, and things like that. And everybody in the city is real nervous about it, so we're trying to crack down. That's what we are really doing.

**Singh:** [Inaudible]

**Officer Landry:** Well, look. Just, just to kind of go along with me on it, to make sure I'm doing my job . . . uh . . . and everything like that, do you have anything people need to know about?

**Singh:** No, sir.

**Officer Landry:** Any bombs, or guns, or knives?

**Singh:** No, sir. I don't do nothing like that. I swear.

**Officer Landry:** Nothing like that?

**Singh:** I swear that on my kids and my wife.

**Officer Landry:** Okay. Well, would you mind—would you mind if we checked just to make sure there's no, nothing explosive or anything dangerous?

**Singh:** No, sir.

**Officer Landry:** I really appreciate you cooperating with me about it.

**Singh:** Yeah, yeah. Yeah, sure.

**Officer Landry:** Yeah.

DN 58 at 2:20–3:43; DN 55 at 2 (producing transcript of video recording).

Landry then directed Singh to exit the vehicle, frisked him, and had him wait by Landry's police cruiser. Landry then set about searching the car. Eventually, Landry then moved to the front passenger seat. There, he found Singh's phone, picked it up, and scrolled through it. Landry then opened a backpack laying in the floorboard of the passenger seat and discovered five pounds of methamphetamine. Landry returned to Singh, handcuffed him, and placed him in Landry's police cruiser.

## III.    Discussion

"It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is 'per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions.' It is equally well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (internal citations omitted). "But the Fourth and Fourteenth Amendments require that a consent not be coerced, by explicit or implicit means, by implied threat or covert force." *Id.* at 228. Determining whether consent was coerced "is a question of fact to be determined from the totality of all the circumstances." *Id.* at 227.

Singh puts forward several issues that he argues combined to coerce his involuntarily consent. These issues include: that he was not informed of his right to decline consent, that the stop was pretextual, that the officers exhibited a show of force which mandated compliance, that he had a limited ability to understand the English language, that the officers were operating under a ruse that Singh could be a terrorist, and that Landry exceeded the scope of Singh's consent.[2]

The first two arguments are easily disposed of. First, the Fourth Amendment clearly does not require officers to inform a consenter of his right to decline consent. *Id.* ("While knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the sine qua non of an effective consent."). Second, even assuming *arguendo* that the reason for the stop was pretextual, it is of no consequence to this inquiry since Singh has admitted that he has no basis to challenge the stop of his vehicle. *Whren v. United States*, 517 U.S. 806, 813 (1996) (constitutional reasonableness does not depend on the actual motivations of the individual officers involved).

A sufficient show of force can vitiate voluntariness. To support his argument on this point, Singh points to the fact that "[t]here were at least two police cars and three officers at the traffic stop" by the point that he consented to the search. However, voluntary consent is entirely capable under similar scenarios. *See e.g. United States v. Cunnagin*, No. 10-31-ART, 2011 WL 4072817, at *3 (E.D. Ky. Sept. 3, 2011) (consent voluntary where "three vehicles and four officers were present . . . only [one] approached [the defendant], and he did not raise his voice or draw his weapon."); *United States v. Rodriguez-Davila*, No. 05-91-KKC, 2006 WL 782740, at

---

[2] In his brief, Singh also argues that some of his statements made after he was detained were obtained in violation of *Miranda*. The United States has stipulated that it will not offer those statements. DN 55 at 6. Therefore, the Court will deny the motion to suppress those statements without prejudice, subject to reinstatement if the United States attempts to offer them later.

*10 (E.D. Ky. March 21, 2006) ("A reasonable person normally would not expect the presence of multiple officers and a drug dog when they are stopped for an ordinary traffic violation. Despite such heightened presence, the circumstances here do not reflect objectively coercive behavior by the officers.").

Of course, the government's burden to prove voluntariness of consent is "heavier where it appears that the owner is illiterate or a foreigner who does not readily speak and understand the English language." *United States v. Hernandez*, 443 F. App'x 34, 40 (6th Cir. 2011) (quoting *Kovach v. United States*, 53 F.2d 639, 639 (6th Cir. 1931) (per curiam)). The video certainly depicts that Singh speaks with an accent, but he appears to understand the officer's commands and questions and answers with little hesitation in clearly understandable English.[3] Under similar circumstances, consent has been determined to be voluntary. *See e.g. United States v. Zuniga*, 613 F. App'x 501, 508 (6th Cir. 2015) (consent voluntary where the defendant "understood their conversation and responded in English to his questions—including questions asking [him] for his insurance and driver's license, where he was coming from and going, and the type of work that he did"); *United States v. Ayoub*, 498 F.3d 532, 542 (6th Cir. 2007) (consent voluntary where consenter "was able to communicate in English without significant assistance"); *United States v. Riascos–Suarez*, 73 F.3d 616, 625 (6th Cir. 1996), *abrogated on other grounds by Muscarello v. United States*, 524 U.S. 125, 138 (1998) (consent valid where the defendant "had no difficulty responding in English to questions posed at the scene of the arrest and did not indicate that he did

---

[3] The Court does note that Singh has been provided a Punjabi interpreter at Court hearings. DN 14. However, this fact is irrelevant in determining whether the consent provided at the time of the search was voluntary. *United States v. Munoz-Villalba*, 251 F. App'x 90, 93 (3rd Cir. 2007) (consent to search voluntary despite the fact that English was not the defendant's first language and he requested the periodic assistance of an interpreter during his testimony at a suppression hearing). Further, at the time of his consent, Singh did not request an interpreter, a fact found significant by other courts. *See e.g. United States v. Delgado-Herrera*, No. 07-47, 2007 WL 1542994, at *1 (D. Minn. May 23, 2007) ("He answered questions appropriately and never indicated he was having difficulty with English. Defendant never asked for an interpreter or sought to stop the interview.").

not understand the detective's inquiries"); *United States v. Valdez*, 147 F. App'x 591, 596 (6th Cir. 2005) (consent valid where defendant could "understand, and interact with" law enforcement, including complying with requests to produce his license and responding to questions about his travel plans in English).

Singh also argues that the officers coordinated a ruse and "implied that they thought this brown-skinned immigrant might be a terrorist, and tapped into the cultural narrative that we must all comply with law enforcement's attempts to combat terrorism." This somewhat novel argument is also unavailing. As an initial matter, the consent inquiry is whether *a reasonable person* would feel coerced. *Florida v. Bostick*, 501 U.S. 429, 434 (1991). The inquiry is therefore objective, rather than subjective. However, even looking beyond that standard, it is unclear that an amorphous concern regarding our "cultural narratives" surrounding terrorism could be coercive alone or in conjunction with other factors. *See United States v. Davis*, 286 F. App'x 574, 579 (10th Cir. 2007) (finding consent voluntary despite argument "regarding the effect the post–9–11 airport security has had on passengers' willingness to consent to search").

Singh briefly argues that Landry's search of Singh's cell phone on the passenger seat was beyond the scope of Singh's consent. It is clear that the search of a cell phone pursuant to the search-incident-to-arrest warrant exception is impermissible. *Riley v. California*, 573 U.S. 373 (2014). However, *Riley* by its own terms does not prohibit all searches of digital items undertaken pursuant to other exceptions (e.g. consent). To the extent Singh contends that it exceeds the scope of his consent, it is well-settled that the burden of limiting the scope of consent fell on Singh. *Florida v. Jimeno*, 500 U.S. 248, 251 (1991). Regardless, the United States has not indicated that it wishes to introduce any evidence from the cell phone and, since the search of the

phone occurred after Singh consented to the search, it has no bearing on the voluntariness of that consent.

**IV.     Conclusion**

Taking all of the factors surrounding the stop and search in conjunction and viewing them from the light of a reasonable person, the totality of the circumstances clearly demonstrated in Landry's body camera footage indicates that Singh voluntarily consented to the search of his vehicle following a valid traffic stop. As a result, the Court will deny the motion to suppress in its entirety.

A separate order will be entered in accordance with this opinion.

July 1, 2019

**Charles R. Simpson III, Senior Judge**
**United States District Court**